| ¡WILLIAM V. REDMANN, Judge Pro Tem.
An employer’s appeal from a workers’ compensation award (for a soft tissue injury sustained by plaintiff on February 21, 1993, while pulling a welding machine up stairs) seeks reversal only of penalties and attorney’s fees.
The hearing officer reasoned:
*1081 The defendant ignored parts of the doctors’ opinions and recommendations that did not state what they wanted them to state. In doing this they acted arbitrary [sic ] and capriciously in cutting off claimant’s weekly compensation benefits when one of their own doctors felt that claimant was still disabled and should not work. The defendants were arbitrary and capricious in their failure to authorize medical care that was recommended for claimant. [Emphasis added.]
The “one of their own doctors” had to be psychologist Dr. Waggoner, to whom family practitioner Dr. Waldo (selected by defendant) referred plaintiff when neither Dr. Waldo, nor orthopedist Dr. Nutik, nor a magnetic resonance imaging type x-ray could find any physical explanation for plaintiffs continuing complaints four months after the accident. Even Dr. Waggoner agreed, at the time of his much later deposition, that plaintiff should have attempted to return to light duty at that time.
Whether Dr. Waggoner was one of defendant’s “own doctors” is arguable, but, if so, that circumstance would not necessarily make defendant arbitrary in not acting on the psychologist’s opinion and relying instead on the opinion of the treating physician and the orthopedist. An employer’s agreement to pay for a psychological examination does not constitute an agreement to let the psychologist be the conclusive judge of the plaintiffs disability. It does not oblige the employer to pay compensation if the psychologist deems the employee psychologically disabled (at least without meeting the statutory requirements hereafter noted). And it does not prevent the employer from seeking another psychological or psychiatric opinion, nor make the employer arbitrary for reasonably relying on that later opinion when contrary, as occurred here.
If plaintiffs soft tissue injury physically disabled plaintiff, it is beyond the competence of a psychologist to say either that it did so in the first place, or that that original physical disability “still” continues.
hThe psychologist’s only legal competence is to diagnose a mental injury or illness, and for such a condition to be compensable, La. R.S. 23:1021(7)(c) requires that a mental injury or illness resulting from a physical injury must be “demonstrated by clear and convincing evidence.”[2] Furthermore, R.S. 23:1021(7)(d) denies compensability unless the mental condition is “diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.”
But, asked his diagnosis of plaintiffs psychiatric condition when he examined him, Dr. Waggoner replied, “I don’t think I gave him a DSM-III diagnostic code in my report. Given his findings, I would diagnose him as suffering from hypochondriasis. Also, I would diagnose him as simple phobia.” Later in his deposition, Dr. Waggoner testified of plaintiff, “He’s got two main problems. Depression is the worst. The secondary problem is still the fear of what the therapy’s going to do.”
Dr. Waggoner does not state the criteria he used for his diagnosis of depression or for his diagnosis of phobia (fear of being injured by therapy or by return to even the least demanding work). Nor did Dr. Waggoner point out how his diagnosis met the DSM criteria. (A not-for-publication excerpt of Dr. Waggoner’s testimony is attached.)
We therefore cannot find the employer’s termination of benefits arbitrary and capricious. Plaintiffs was not a diagnosed disabling mental condition, resulting from the accident at work and meeting that condition’s DSM criteria, and “demonstrated by clear and convincing evidence.”
Additionally, Dr. Waggoner testified that plaintiffs worst problem results not from his on-the-job injury, but from his being told, after his medical doctors deemed him able to *1082 do so, to go back |4to the job (at light duty), and even more from the discontinuation of his compensation when he refused.[3]
Whether an employer has been arbitrary in terminating or refusing to reinstate compensation payments must be judged not by hindsight but by the information that the employer has at the time of the questioned action. Certainly an employer who (although without evidence regarding the occurrence of the alleged accident) has opinions from doctors that the employee is not disabled, or that the employee requires only some temporary adjustment in work duties, cannot be held arbitrary if it withholds compensation payments when the employee refuses even light duty: and the fact that a psychologist or another medical doctor believes the employee is disabled does not oblige the employer to pay compensation notwithstanding the first doctors’ opinions.
Reversed as to award of penalties and attorney’s fees. Plaintiff is to bear the costs of appeal.

. That is, by a standard that is "more than a ‘preponderance of the evidence’ but less than “beyond a reasonable doubt'. The existence of the disputed fact must be highly probable, that is, much more probable than its non-existence.” Succession of Lyons, 452 So.2d 1161, 1165 (La. 1984) [Emphasis in original.]

. He's got two main problems. Depression is the worst. The secondary problem is still the fear of what the therapy's going to do.... Q. Would it be fair to say that a good bit of his depression is from the actual claim process itself rather than back to the original injury; ... depositions, hearings, meetings with attorneys? A. The depression that he still has started long before the hearings and the depositions were going on. It started and it became a significant factor following the instance when he did not go back to work when he was told to, and then the subsequent having zero income coming in.... That's when the depression really became a primary factor, worse or more significant than the hypochondriasis.